NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

In the matter of                  :        Case No. 05-18722/JHW

Virginia L. Lipscomb,             :
aka Virginia Lee Glover
aka Virginia Glover-Lipscomb      :        **OPINION**


           Debtor                 :
_____

APPEARANCES:    David Paul Daniels, Esq.
                3300 Federal Street
                Camden, New Jersey  08105
                Counsel for the Debtor

                William M. E. Powers, III, Esq.
                Powers Kirn, LLC
                9 East Stow Road, Suite C
                Marlton, New Jersey  08053
                Counsel for World Savings Bank, FSB

**FILED**
JAMES J. WALDRON, CLERK

May 17, 2006

U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY: s/ M. Boyer
DEPUTY

                Isabel Balboa, Esq.
                Chapter 13 Standing Trustee
                535 Route 38, Suite 280
                Cherry Hill, New Jersey  08034


Before the court for resolution is the debtor's motion to reduce the proof of claim filed by World Savings Bank, the holder of a mortgage on her home, by $12,300.00.  The debtor objects to certain entries in the itemization of charges attached to the mortgagee's proof of claim, and also questions whether she was properly credited for all of the payments that were made on the mortgage.  On

this record, I will sustain the debtor's challenge to the World Savings Bank

proof of claim as to the allowance of bankruptcy attorneys' fees.  I will reject

the debtor's challenges to the other entries in the proof of claim.  I will also

offer to World Savings Bank a final opportunity to detail and document the

escrow charges contained in the proof of claim.


**FACTS**


Virginia L. Lipscomb filed a voluntary petition under Chapter 13 of the

Bankruptcy Code on March 21, 2005.  Her proposed Chapter13 plan seeks to

cure the arrears on a mortgage obtained individually by her husband, Michael

K. Lipscomb, from World Savings Bank on March 3, 1999, on property used as

their principal residence at 3805 Babe Court, Voorhees, New Jersey.  Michael

Lipscomb is the sole mortgagor on the loan documents.  The debtor explains

that she and her husband are "effectively separated" but that she currently

lives in the subject property while he continues to use the home as his

residence as well.  Although this is Virginia Lipscomb's first bankruptcy filing,

the property at issue has been the subject of four previous bankruptcy

petitions filed by Michael Lipscomb.[1]

---

[1]      It is noted that debtor's counsel was also counsel for all four of Mr.
Lipscomb's Chapter 13 filings.

On March 26, 2001, Michael Lipscomb fell into default on his loan, and on June 29, 2001, he filed an individual voluntary petition under Chapter 13 of the Bankruptcy Code, case number 01-16669/GMB.  He scheduled the subject property as his personal residence and listed a secured claim held by World Savings Bank.  His case was later dismissed on January 24, 2002 for failing to file tax returns.  Mr. Lipscomb refiled for Chapter 13 relief two weeks later on February 8, 2002, case number 02-11241/GMB.  When the debtor failed to make his regular monthly mortgage payments outside of the plan, World Savings Bank sought relief from the automatic stay.  Debtor's second case was dismissed on June 25, 2002, again for failing to file tax returns.[2]  Mr. Lipscomb then filed a third Chapter 13 petition on July 17, 2002, case number 02-17012/JHW.  On December 13, 2002, this case was dismissed for failure to file tax returns and for failing to make the preconfirmation payments to the trustee.

One month later, Michael Lipscomb filed his fourth consecutive Chapter 13 petition, case number 03-11452/GMB.  On October 29, 2003, World Savings Bank moved for relief from the automatic stay and for prospective

---

[2]     An order was entered on August 22, 2002, providing a repayment scheme for the debtor to cure his arrears to World Savings Bank.  Debtor's case was not closed until June 17, 2003.

relief.  On December 29, 2003, an order was entered providing a repayment

scheme for Mr. Lipscomb to cure his post petition mortgage arrears to World

Savings Bank.  The order also provided that upon default or dismissal of the

debtor's case, World Savings Bank, "its successors and assigns are granted in

rem prospective relief and thereby permitted to proceed against premises

known as 3805 Babe Court, Voorhees, NJ, without regard for <u>any</u> automatic

stays issuing as a result of <u>any</u> bankruptcy petition filed subsequent to the

commencement of the instant case."  (Emphasis in original).  Michael

Lipscomb's case was subsequently dismissed on June 25, 2004 for failing to

make all of the required payments to the Chapter 13 trustee.  His motion to

reinstate the case was denied and his fourth bankruptcy case was closed on

October 8, 2004.

At some point, World Savings Bank obtained a judgment of foreclosure[3],

and a sheriff's sale of the Babe Court property was scheduled for April 13,

2005.

Virginia L. Lipscomb filed her voluntary petition under Chapter 13 of the

Bankruptcy Code on March 21, 2005.  She scheduled her principal residence

---

[3]    A copy of the judgment of foreclosure has not been provided to the court.

as 3805 Babe Court, Voorhees, New Jersey with a market value of $50,000.00

and liens in the total amount of $64,377.00.[4]  World Savings Bank[5] was listed

as the first mortgagee with a secured claim in the amount of $47,817.00.

Commerce Bank was listed as the second mortgagee with a secured claim in

the amount of $6,260.00, and La Bonne Vie at Echelon Condo Association was

listed with a secure claim for unpaid association dues in the amount of

$10,300.00.  Debtor's Chapter 13 plan proposed to pay $275.00 a month for 60

months to cure arrears in the amount of $12,500 to World Savings, with no

interest, and $10,300 to La Bonne Vie, also with no interest.  The debtor also

proposed to reduce Commerce Bank's claim to zero.

Concerned over the potential reach of the December 29, 2003 prospective

relief order entered in her husband's case, the debtor filed a motion to reinstate

the automatic stay on March 28, 2005 as to the Babe Court property and

World Savings Bank.[6]  Debtor's motion was provisionally granted on July 27,

2005.  The automatic stay was reinstated, Ms. Lipscomb was afforded an

---

[4]    In her schedules, the debtor separately lists $6,000 as her interest
in a time share, which has a lien of $6,253 against it.

[5]    Listed in the debtor's schedules as "World Financial Network
National Bank."

[6]    Debtor's relief was granted by order dated April 25, 2005.  This
order was vacated on June 24, 2005 because of notice and service deficiencies.

opportunity to cure the post petition arrears, and World Savings Bank was

granted in rem prospective relief in the event of a default or dismissal.


On August 12, 2005, World Savings Bank filed a proof of claim, asserting

a secured claim in the amount of $54,913.39, including arrears of $21,001.08.

World Savings Bank based its claim on the mortgage and adjustable rate note

in the amount of $30,900.00 executed between Michael K. Lipscomb and World

Savings Bank on March 3, 1999.  The Note provided for a variable interest

component, subject to change biweekly but not to exceed 11.950%.  Initial

biweekly payments were set at $64.73 and were subject to revision each year.

As of the date of the debtor's bankruptcy filing, World Savings Bank calculated

that the debtor had missed 59 payments between December 30, 2002 and

March 31, 2005 in the total amount of $8,238.25.  The proof of claim included,

among other charges, $233.12 in late charges, $4,856.67 in foreclosure fees,

$2,179.84 in attorney fees, $675.00 for appraisals, $3,863.64 in escrow

shortages and $990.00 in other costs.


On October 4, 2005, the debtor moved to reduce the claim of World

Savings Bank by $12,300.00.[7]  This matter came before the court on

---

[7]    World Savings Bank filed an amended proof of claim on December
30, 2005, reducing its secured claim to $47,752.11 and its arrears to

January 17, 2006, at which time the debtor requested a decision on the

papers.

## **DISCUSSION**

A proof of claim is deemed allowed unless a party in interest timely

objects.  11 U.S.C. § 502(a).  While the initial burden is on the claimant to

allege sufficient facts to support its claim, In re Allegheny Intern., Inc., 954

F.2d 167, 173 (3d Cir. 1992), the burden shifts to the objector to overcome the

prima facie nature of a properly filed and supported claim.  Id.  "If the objector

produces sufficient evidence to negate one or more of the sworn facts in the

proof of claim, the burden reverts to the claimant to prove the validity of the

claim by a preponderance of the evidence.  The burden of persuasion is always

on the claimant."  Id.  See also In re Mariner Post Acute Network, Inc., 155

Fed.Appx. 611, 612 (3d Cir. 2005); In re Buchholz, 224 B.R. 13, 20 (Bankr.

D.N.J. 1998).

In this case, the debtor challenges the amount of the asserted monthly

mortgage payments, several of the line items included in the itemization

---

$11,282.47 following a payment of $9,000 by the debtor.

attached to the proof of claim filed by World Savings Bank, whether she has

been given credit for payments made, and the discrepancy between the proof of

claim and the reinstatement quote given by the mortgagee.

A.    <u>Monthly Mortgage Payments and Escrow Deposits</u>.

The debtor objects to the amount of the payments indicated as

delinquent in the mortgagee's proof of claim.  The debtor claims that the

payments under the mortgage should be $64.73 biweekly, with no provision for

escrow.  She contends that the mortgage does not provide for an escrow

payment, and that to the extent that World Savings Bank has in fact paid real

estate taxes or insurance on the debtor's behalf, the debtor asks for the

supporting documentation.

World Savings Bank explains that the mortgage in question is an

adjustable rate mortgage that allows for biweekly interest adjustments, an

annual change in the required biweekly mortgage amount, and a provision for

escrow.  The mortgage note allows the mortgagee to adjust the interest rate

every other week, but otherwise locks the biweekly payment amount in for a

one year period, subject to change on April 10th of each year.

The debtor correctly recites that the mortgage and note between the parties contemplated that the debtor would pay only principal and interest to the mortgagee, and would pay taxes and insurance directly.  However, the mortgage does permit the mortgagee to maintain an escrow account and to make payments for taxes, insurance and other charges from the escrow account.[8]

From the documentation presented, I am able to discern that pre-petition, the debtor is being charged for the following defaults:

---

[8]     Paragraph 2(B) of the mortgage between the parties provides for an escrow component.  Paragraph 2 provides in relevant part:

(A) Borrower's Obligations

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

(B) Escrow Accounts

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for:  (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; . . . (c) yearly hazard or property insurance premiums . . . .  Lender may, at any time, collect and hold Funds.

| Payments | Principal and Interest | Escrow Deposit |
|---|---|---|
| 7 payments at $131.47 | $80.30 | $51.08 |
| 26 payments at $137.49 | $86.41 | $51.08 |
| 26 payments at $143.97 | $92.89 | $51.08 |

The debtor is therefore being charged for $3,013.72 in pre-petition escrow deposits ($51.08 x 59) as a part of her bi-weekly payment. In addition, the proof of claim contains an escrow shortage of $3,853.64 as of the date of the filing of the petition, for a total claimed escrow shortage of $6,867.36. The mortgage company has provided inadequate documentation to justify the escrow shortage requested to be paid in the proof of claim.[9] I will afford the World Savings Bank a further opportunity to list the pre-petition expenses paid for which reimbursement is sought, including taxes and water and sewer liens. If the documentation is not provided, the debtor's motion to reduce the mortgagee's proof of claim by the amount of escrow shortage sought will be granted.

---

[9]     The mortgage company claims a negative escrow account balance of $5,552.05 as of the filing date, based in part on "maintaining the escrow constant and several disbursements to redeem non-escrowed water and sewer liens." The loan histories and sparse documentation provided are undecipherable on the actual payments made by the mortgage to justify either the asserted negative escrow account balance of $5,552.05, or the claimed escrow shortage of $6,867.36.

B.    <u>Foreclosure Fees and Prior Bankruptcy Fees</u>.

The debtor challenges the $4,856.67 in foreclosure fees and $2,179.84 in prior bankruptcy related fees included in World Savings Bank's proof of claim, asserting that the fees are unreasonable.  In its amended proof of claim, the mortgagee has modified this amount for a total request of $4,820.96.  These fees include $1,382.90 for "Foreclosure: Taxed Costs - in Writ," $1,258.22 in "Execution advances - Sheriff deposits, adjournment, noticing", and $2,179.84 for "Bankruptcy - Legal fee prior case(s)."

World Savings Bank contends that the allowance of such fees is appropriate where the debtor has elected to cure under 11 U.S.C. § 1322(b)(5) in a manner inconsistent with satisfaction of the foreclosure judgment.  The mortgagee alternatively asserts that the bankruptcy fees were incurred in connection with Michael Lipscomb's prior four bankruptcy filings, and as such, the debtor lacks standing to challenge them.  World Savings Bank views the debtor's current filing as an attempt to circumvent the prospective relief granted in Michael Lipscomb's fourth bankruptcy filing.[10]  Finally, the

---

[10]    The determination reached by this court on July 27, 2005 reinstating the automatic stay, affording the debtor the opportunity to cure the post-petition arrears, and granting prospective relief to the mortgagee in the event of default appears to have resolved the issue of the debtor's opportunity

mortgagee contends that such fees are allowable under the terms of the loan

documents.

On the issue of whether the mortgagee is entitled to foreclosure and

bankruptcy fees as part of its arrearage claim that the debtor proposes to cure

under her Chapter 13 plan, we are guided by 11 U.S.C. § 1322(e), which

provides that:

> Notwithstanding subsection (b)(2) of this section and sections
> 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure
> a default, the amount necessary to cure the default, shall be
> determined in accordance with the underlying agreement and
> applicable nonbankruptcy law.

11 U.S.C. § 1322(e).

The underlying agreement of the parties, the mortgage, provides in

paragraph 27 that in the event of a default, where the mortgagee proceeds to

sell the property, the "Lender may add to the amount that [the mortgagor]

owe[s] to Lender all legal fees, costs, allowances, and disbursements incurred

as a result of the action to sell the Property, except to the extent that the

Applicable Law limits or prohibits any such charges."  The language in the

mortgage supports the mortgagee's claim that in the context of a foreclosure

---

to cure the default in this Chapter 13 case.

judgment and sale, the mortgagee may charge reasonable attorneys' fees,

"except to the extent that the Applicable Law limits . . . any such charges."

As to the applicable nonbankruptcy law, we look to foreclosure

procedures in the state of New Jersey.  The foreclosure judgment entered in

this case was not presented in this record.  The writ of execution issued on

February 1, 2005 reflects that the taxed costs awarded to the plaintiff were

$1,382.90.  The mortgagee asserts that the taxed costs include a legal fee of

$585.22.

Under New Jersey state law, New Jersey Court Rule 4:42-9(a)(4) places a

cap on the amount of attorneys' fees that may be awarded in connection with a

foreclosure action.  The relevance of the cap on attorneys fees where the debtor

proposes to cure a default and reinstate a mortgage in a Chapter 13 case was

addressed by Judge Lyons in In re Hatala, 295 B.R. 62 (Bankr. D.N.J. 2003).

In Hatala, the debtor sought to modify the proof of claim filed by

Wachovia Bank.  Wachovia had obtained a judgment of foreclosure which

included an award of $919.30 in attorneys' fees.  Wachovia's proof of claim

sought attorneys' fees in the amount of $4,441.20.  These fees included

prepetition foreclosure work, work done during the debtor's prior bankruptcy

-13-

filing, and subsequent foreclosure fees.

As we do here, the court focused on section 1322(e) to reflect that the amount necessary to cure the debtor's default must be determined by reference to the mortgage documents and applicable state law.  295 B.R. at 65.  <u>See</u> <u>also</u> <u>Smiriglio v. Hudson United Bank</u>, 98 Fed. Appx. 914, 915 (3d Cir. 2004) ("every bankruptcy court to consider the matter appears to have agreed or assumed that 'when a debtor seeks to cure a prepetition payment default over the life of a Chapter 13 plan . . . the amount of the arrearage must be "determined in accordance with the underlying agreement and applicable nonbankruptcy law"'").  In <u>Hatala</u>, both the mortgage and note in question provided for reasonable attorneys' fees.

As to the relevant state law, the court determined "that the mortgagee is not entitled to any additional fees beyond the amount allowed in the foreclosure judgment." <u>Id</u>. at 66.  Citing to New Jersey Court Rule 4:42-9, the court noted that "the rule limits the amount of counsel fees that the lender may collect, regardless of how much the lender actually spends on attorney services in the foreclosure action." <u>Id</u>.  The limitation was found to be consistent with

the aim of the New Jersey Fair Foreclosure Act,[11] and in conformance with the

decision in <u>Stewart Title Guar. Co. v. Lewis</u>, 347 N.J. Super. 127, 788 A.2d 941

(Ch. Div. 2001).[12]  The <u>Hatala</u> court concluded that "[i]n the state law context,

once a mortgagee obtains a foreclosure judgment, its rights are limited to

satisfaction of the judgment." <u>Id</u>. at 67.  "[O]nce a lender has obtained a

judgment that includes reasonable attorney's fees, the lender may not

thereafter amend the judgment to include additional fees for post judgment

services rendered, unless the underlying agreement explicitly states that such

fees are allowed." <u>Id</u>. at 68.  The express language of the Hatala mortgage only

permitted the collection of fees in the foreclosure proceeding.  "There is no

reason why the debtor should have to pay more in bankruptcy than outside of

---

[11]      The New Jersey Fair Foreclosure Act, N.J.S.A. §§ 2A:50-53 to 50-68, limits the amount of attorneys' fees to be paid by a mortgagor who is curing a mortgage default to "the amount permitted under the Rules Governing the Courts of the State of New Jersey."  N.J.S.A. § 2A:50-57.

[12]      In <u>Stewart Title</u>, the plaintiffs were granted relief from the automatic stay to allow the Chancery Division to hear their application for additional fees and expenses beyond those awarded in the judgment of foreclosure.  <u>Stewart Title Guaranty Co. v. Lewis</u>, 347 N.J. Super. 127, 788 A.2d 941 (Ch. Div. 2001).  The plaintiffs' quest for additional fees was rejected by the state court on the ground that the court lacked discretion to exceed the maximum award permitted under R.4:42-9(a)(4).  The court traced a series of actions by the defendants that led the plaintiffs to "incur sizable legal fees." While the court was "quite convinced that plaintiffs [were] greatly wronged by the machinations of defendant and her other family members in the charade described earlier and an award of the fee sought would constitute a most equitable and desirable result," the court was "also abundantly satisfied that R.4:42-9(a)(4) prohibits such a result."  <u>Id</u>. at 138, 788 A.2d 948.

it." Id. The court reasoned that "such a result would provide a windfall to

secured creditors and harm the interests of unsecured creditors who would

then receive a smaller percentage of the debtor's income towards their claims."

Id. The court also rejected any reliance on section 506(b), again pointing to the

exception in section 1322(e), which begins with the language "Notwithstanding

. . . section [ ] 506(b) . . . of this title." Id. at 69 (quoting 11 U.S.C. § 1322(e)).


The recent Third Circuit decisions in Smiriglio and A&P Diversified are

instructive, but clearly distinguishable. In Smiriglio, the mortgagee did not

hold a foreclosure judgment and had not filed a foreclosure action. The Circuit

rejected the debtors' contention that attorneys' fees incurred during

bankruptcy proceedings by the mortgagee were nonetheless limited by New

Jersey Court Rule 4:42-9(a)(4), which pertains only to "actions for the

foreclosure of a mortgage." Smiriglio v. Hudson United Bank, 98 Fed. Appx.

914 (3d Cir. 2004).[13] The court distinguished between fees incurred in the

context of a foreclosure action, and fees incurred in the context of a

bankruptcy proceeding, and determined that because the fees at issue were

---

[13]     The Smiriglio case is "Not Precedential." The Internal Operating
Procedures of the Third Circuit provide in pertinent part that "Not Precedential"
opinions "are not regarded as precedents that bind the Court because they do
not circulate to the full Court before filing." IOP 5.7. While the Court of
Appeals may not be bound by the result, the opinion is of interest here.

incurred in the bankruptcy action rather than in a foreclosure action, the rule was not applicable and did not act to cap fees incurred in the bankruptcy proceedings.  The court declined to expand the rule to encompass "actions <u>related to</u> or <u>connected</u> in some way to the foreclosure of a mortgage."  <u>Id</u>. at 916 (emphasis in original).[14]   The distinction clearly presented between <u>Smiriglio</u> and the case <u>sub judice</u> is that while <u>Smiriglio</u> was not connected to the foreclosure of a mortgage, in this case, a foreclosure process ensued, a foreclosure judgment was entered, and the bankruptcy case is "related to or connected" to the foreclosure in attempting to cure the default underlying the foreclosure.  Under applicable New Jersey law, the curing of a default requires the mortgagor to pay reasonable attorneys' fees as well as the amount in default, up to the cap specified.

      <u>A&P Diversified</u> involved a claim under Chapter 7 of the Bankruptcy Code.  <u>In re A&P Diversified Technologies Realty, Inc.</u>, --- F.3d ----, 2006 WL 133492 (3d Cir. 2006).  The debtor, A&P Diversified Technologies Realty, Inc., executed a mortgage and note in favor of Fleet Bank, N.A.  After the debtor

---

      [14]      The Court of Appeals distinguished <u>Stewart Title</u>, where the state court denied fees in excess of the cap, including bankruptcy fees, because <u>Stewart Title</u> "undisputedly involved an action for foreclosure, and so there could be no question (as there is here) that the Rule applied." 98 Fed. Appx. at 917.

defaulted, Fleet commenced foreclosure proceedings.  The debtor filed a

voluntary Chapter 11 proceeding, staying the foreclosure action.  Fleet received

relief from the automatic stay and continued with the foreclosure.  Fleet

obtained a foreclosure judgment, was awarded $7,500.00 in counsel fees

pursuant to Rule 4:42-9(a)(4), and collected the entire amount of the judgment.

The debtor's case was converted to Chapter 7 and the trustee moved to

expunge Fleet's claim for attorneys' fees beyond the fees awarded in the

foreclosure proceeding.  The bankruptcy court denied the trustee's motion and

awarded attorneys' fees in the amount of $304,181.45 and costs of $32,772.43.

The district court affirmed.


The Third Circuit agreed with the trustee that there was "'no entitlement

to counsel fees under section 506(b) because the note and mortgage on which

[the mortgagee] relied for its section 506(b) claim had been extinguished by

merger into the final judgment of foreclosure.'"  Id. at *3 (quoting the

Appellant's Brief at 16).  Citing to In re Roach, 824 F.2d 1370 (3d Cir. 1987),

the court concluded that "[u]nder the merger doctrine, a contract is deemed to

merge with the judgment, thereby depriving a plaintiff from being able to assert

claims based on the terms and provisions of the contractual instrument."  Id.


Like the mortgage and note in the A&P Diversified case, the mortgage

-18-

and note of the World Savings Bank in this case were extinguished by merger into the final judgment of foreclosure.  Unlike the A&P Diversified case, in which the mortgagee was satisfied in full through the foreclosure process, the debtor here seeks to undo the merger and to reinstate the mortgage and note by curing the default under 11 U.S.C. § 1322(b)(5) and § 1322(e).  While the result may be the same, i.e., the denial of attorneys fees in excess of the amount allowed in R.4:42-9(a)(4), the path to reach that decision is different.

In this case, the mortgage provides for fees incurred in connection with the sale of the property, i.e., the foreclosure process.  The Hatala court cited the case of Hatch v. T&L Assocs., 319 N.J. Super. 644, 726 A.2d 308, 309 (App. Div. 1999) for the proposition that additional fees for post-judgment services may only be permitted where "the underlying agreement explicitly states that such fees are allowed."  295 B.R. at 68.  There is no such explicit provision for supplemental or bankruptcy related fees in the mortgage under consideration here.  The debtor may cure the default on the mortgage in the amount necessary to cure as specified under New Jersey law.  The amount of attorneys' fees that may be charged to cure a default is limited to the rate set forth in the New Jersey Court rules.  N.J.S.A. § 2A:50-57(b)(3).

I conclude that the foreclosure and bankruptcy related fees incurred by

the mortgagee in the course of previous bankruptcy cases filed by the debtor or

her husband are limited under 11 U.S.C. § 1322(e) by the mortgage document

and the applicable state law.  In this case, the mortgage limits fees to those

involved in selling the property and state law caps foreclosure fees at the rate

set forth in the applicable state court rules.  The fees awarded in connection

with the judgment of foreclosure will dictate the allowable fees here.  The

supplemental attorneys' fees requested in the mortgagee's proof of claim will be

disallowed.


      C.    <u>"Other" Costs</u>.


      The debtor also objects to $990.00 listed as "other" costs in the proof of

claim.  World Savings Bank has provided documentation showing that this

amount was paid toward the unpaid condominium association dues on the

debtor's behalf.  This payment appears to be covered by paragraph 2 of the

mortgage.  The debtor's challenge to this line item in the proof of claim is

rejected.


      D.    <u>Appraisal Fees</u>.


      The debtor asserts that $675.00 is too high of a cost for an appraisal.

The debtor contends that such a cost should normally be in the range of $200-300 for a condominium.

World Savings Bank explains that the $675.00 amount is actually the total cost for three separate appraisals, dated April 23, 2002 (valuing the property at $45,000.00), October 18, 2003 (valuing the property at $83,000.00) and January 27, 2005 (valuing the property at $80,000.00).

Debtor's objection in this regard is overruled.

E.      Credit for Payments Made.

The debtor believes that she was not given credit for thirteen payments that she tendered through various money orders dated between June 2002 and May 2004, totaling approximately $4,790.00.

World Savings Bank has provided the loan payment history and an index indicating when the disputed payments in question were credited.[15]   The

---

[15]     See Certif. in Oppos. at Exh. B1.  There is a discrepancy, albeit in the debtor's favor, for the April 2004 payment.  The debtor provided a copy of a money order in the amount of $100.00 and the mortgagee's records credit the debtor's account in the amount of $144.54.  The greater amount credited is not

mortgagor has sufficiently established that the debtor's payments were in fact credited to her account.  The debtor's objection in this regard is overruled.

F.    <u>Discrepancy With Reinstatement Quote</u>.

Finally, the debtor asserts that the proof of claim is suspect because it is $5,180.20 higher than a reinstatement quote sent by World Savings Bank to the debtor's husband on April 21, 2005.

World Savings Bank explains that the reinstatement quote "overlooked the escrow shortage and other charges."  I will be guided here by the proof of claim filed rather than an informal reinstatement quote which may have been mistaken.

The debtor's objection in this regard is overruled.

## **CONCLUSION**

World Savings Bank shall submit the additional information outlined

---

explained in the papers.

above by June 9, 2006.  The debtor may respond through June 23, 2006.  The

matter is relisted for hearing on Monday, July 10, 2006, at 2:00 p.m. in court.

Appearances are required.


Dated:   May 17, 2006                    _____
                                         JUDITH H. WIZMUR
                                         CHIEF U.S. BANKRUPTCY JUDGE